UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Techtronic Industries Company Limited, and Techtronic Industries Factory Outlets, Inc.,<br><br>Movant,<br><br>– against –<br><br>Muddy Waters Capital LLC,<br><br>Respondent. | Case No. 1:24-mc-803 |

**PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENA
ON THIRD-PARTY MUDDY WATERS CAPITAL, LLC**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Plaintiffs Techtronic Industries Company Limited and Techtronic Industries Factory Outlets, Inc. (together, "TTI") respectfully move this Court for an order compelling non-party Muddy Waters Capital, LLC ("Muddy Waters") to produce documents responsive to TTI's subpoena.

**INTRODUCTION**

The underlying action, *Techtronic Industries Company Ltd. v. Bonilla*, 8:23-cv-1734 (M.D. Fla.), stems from a "short and distort" scheme operated by Defendant Victor Bonilla ("Bonilla") that caused significant reputational and economic harm to Plaintiff-Movant TTI.  Bonilla is a short seller who published two reports claiming that the company was engaged in fraudulent accounting practices and had defrauded a major partner, which, he falsely asserted, meant that TTI's value was significantly overstated.  These reports were unequivocally false.  But as a result, TTI's stock price dropped by nearly 20%, its credit lines were reduced, it suffered millions of dollars in out-of-pocket harm, and it lost nearly $3.5 billion in market capitalization—and Bonilla profited.  In

response, TTI brought the underlying action for libel and libel per se against Bonilla.



As a result, Muddy Waters's own documents regarding its involvement with Bonilla in his scheme will help establish that Bonilla acted negligently or recklessly. TTI therefore served on Muddy Waters a subpoena consisting of twelve narrowly-tailored document requests. Muddy Waters has refused to comply. Its bases for doing so are boilerplate, conclusory, and generally fail to meet its burden to resist discovery.

For the reasons discussed below, this Court should grant TTI's motion and compel Muddy Waters to produce responsive documents.

## BACKGROUND

TTI is a Hong Kong-based power tool manufacturer that is publicly traded on the Hong Kong stock exchange. Bonilla is a short seller who publishes self-styled "research" reports that purportedly uncover fraud or wrongdoing associated with public companies.[1] In conjunction with publishing, Bonilla either shorts the stock of the company that he reports upon or coordinates with Muddy Waters to short the stock and pay him a portion of the profits. By doing so, Bonilla aims to decrease the share price of his targets so that he and others—including Muddy Waters and the hedge funds he manages—can profit off the harm his reports inflict.

In February and June of 2023, Bonilla published two defamatory "research" reports about TTI and additional defamatory statements on Twitter. The initial report had a devastating effect

---

[1] Bonilla publishes under the pseudonym "Jehoshaphat Research."

on TTI's stock price and partnerships, causing TTI's stock price to drop nearly 20%; the second report caused TTI's stock to drop nearly 5%. Ex. 1 ("Amended Complaint"). Through the MDFL action, TTI seeks to recover its costs, expenses, and reputational harm stemming from Bonilla's defamatory statements. *TTI v. Bonilla*, 8:32-cv-1734 (M.D. Fla.) ("MDFL Action"**)**, ECF No. 68.

TTI uncovered through discovery that Muddy Waters was intimately involved in Bonilla's scheme. ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████ Exs. 2, 3 (BONILLA 006420; BONILLA 006435)). ████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████ Zer0es TV provided Bonilla with a crucial, one-sided outlet for his reports. ████████████████████████

████████████████████████████████ go to the heart of TTI's claim: Bonilla's economic incentive to disregard the truth and cause maximum harm or damage TTI.

On May 23, 2024, TTI served on Muddy Waters a subpoena consisting of eleven requests for documents (the "Requests" or "Request"). TTI requested: (1) documents evidencing an agreement between Muddy Waters and Bonilla (including past versions) (Request No. 1); (2) documents and communications regarding TTI, Jehoshaphat Research, relating to payment for services rendered or monies owed (Requests Nos. 2, 3, 5, 11); (3) documents related to any trading by Muddy Waters in TTI stocks, options, futures, or other securities between August 1, 2022 and the present, including without limitation any short positions (Request No. 4); (4) documents relating to the dissemination and distribution of Bonilla's reports (Requests Nos. 6, 7); documents

3

relating to the Zer0es TV appearances (Requests Nos. 8, 9, 10), and; all non-privileged documents relating to this action (Request No. 12). Ex. 6 (the "Subpoena"). Each Request was narrowly tailored to the time period predating the litigation and the actors associated with Bonilla's reports.

On June 7, counsel for Muddy Waters[2] responded. Ex. 7. Amid a host of boilerplate objections related to relevance and burden, Muddy Waters agreed to produce documents in response to Request Nos. 2, 5, 6, 7, 8, 9, and 10. Muddy Waters declined to produce documents in response to Request Nos. 1, 3, 4, 11, and 12, on the grounds of relevance and burden. Finally, in response to every Request, Muddy Waters objected on the grounds of attorney-client privilege and work-product privilege. However, as of the date of this filing, Muddy Waters has not produced a privilege log or proffered any basis for these claims of privilege over routine business documents and communications with a third party (Bonilla). In the same email, Mr. Esper also objected to the subpoena on behalf of Mr. Bonilla on the basis that it was improper. On June 17, TTI wrote a letter detailing the deficiencies in Muddy Waters' response, and noted that Muddy Waters had failed produce any documents or a privilege log. Muddy Waters did not respond. Ex. 8.

On July 1, Muddy Waters produced nine documents (less than 75 pages total). Each document is a communication to or from Victor Bonilla and also copies Muddy Waters employee Freddie Brick. The documents contain a significant number of redactions to the names of senders and recipients. The documents almost exclusively pertain to Bonilla's appearances on Zer0es TV, and the two documents unrelated to the Zer0es TV appearances confirm that more responsive documents exist (and thus need to be produced). ███████████████████████████
███████████████████████████████████████████ Ex. 9
(MUDDY 000072). The production also has glaring gaps: ███████████████████

---

[2] Muddy Waters and Bonilla are represented by the same counsel, Dilan Esper.

4



On July 8, TTI emailed Muddy Waters to explain the deficiencies with Muddy Waters's production and reassert the deficiencies in Muddy Waters's subpoena responses.  Ex. 10.  TTI informed Muddy Waters that if it did not complete production or otherwise respond, TTI would move to compel.  TTI received no response.

Muddy Waters' delay has caused significant and undue prejudice to TTI's ability to prosecute its case-in-chief, including to seek additional discovery from Bonilla, and to prepare for and take depositions (which are currently underway).  Moreover, it has limited TTI's ability to depose Muddy Waters employee Freddie Brick, and impaired TTI's ability to obtain a full picture of Bonilla's actions, as aided by Muddy Waters, before the mediation scheduled for July 19.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery regarding any nonprivileged matter that is relevant to the parties' claims or defenses and proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  Where, as here, a non-party refuses discovery in response to a validly issued subpoena, Federal Rule of Civil Procedure 45 provides the Court for the district where compliance is required with broad discretion to compel the production of documents and information from third parties.  Fed. R. Civ. P. 45(d)(2)(B)(i); *Netlist, Inc. v. Intel*

*Corp.*, 2023 WL 6345979, at *1 (W.D. Tex. Sept. 28, 2023); *Orix USA Corp v. Armentrout*, 2016 WL 3926507, at *2 (N.D. Tex. July 21, 2016).

Once a party moving to compel discovery establishes that the materials and information are relevant or will lead to the discovery of admissible evidence, the burden rests upon the non-party resisting discovery to substantiate its objections. *611 Carpenter LLC v. Atlantic Casualty Ins. Co.*, 2024 1977160, at *1 (W.D. Tex. April 30, 2024) (internal citations omitted) (granting party's motion to compel non-party subpoena). The non-party "must state with specificity the objection and how it relates to the particular request being opposed, and not merely that it is overly broad and burdensome." *Id.* When determining if a subpoena is relevant, courts apply Rule 26(b)(1)'s relevance standard, which allows parties to discover "any nonprivileged matter that is relevant to any party's claim or defense and that is proportional to the needs of the case." *Cunningham v. Concentrix Sols. Corp.*, 2021 WL 425098, at *2 (E.D. Tex. Feb. 8, 2021). Courts have found subpoenas were not overbroad or unduly burdensome when they asked for documents from specific years of relevance to the litigation. *Donaldson v. Crip*, 2023 WL 6201372, at *6 (E.D. Tex. Sept. 21, 2023); *Swire v. Kempf*, 2020 WL 23626198, at *2 (W.D. Tex. May 11, 2020).

## ARGUMENT

**I.    The Subpoena Seeks Relevant Documents and Communications**

Muddy Waters has refused to produce documents in response to TTI's Requests Nos. 1, 3, 4, 11, and 12 on relevance grounds, Ex. 7, but the documents and communications sought are indisputably relevant to TTI's claims in the MDFL Action.[3]

---

[3] Because Muddy Waters has agreed to produce documents in response to Requests Nos. 2, 5, 6, 7, 8, 9, and 10, it has conceded that those Requests are relevant and thus TTI does not address them here. *See AstraZeneca Pharm. LP v. Handa Pharm.*, LLC, A-10-CA-259 LY, 2010 WL 11506636, at *2 (W.D. Tex. July 1, 2010), *order clarified on reconsideration,* A-10-CA-259

6

*First*, Requests Nos. 1, 3 and 11 are relevant to establishing Bonilla's intent: for example, that Bonilla was not acting as an objective researcher, but instead had a financial motivation to bend the truth, and drive down TTI's stock price to the greatest extent possible to reap the greatest profits possible. Evidence of such motivations supports TTI's claim that Bonilla acted with negligence or recklessly. *Second*, Request 4 is relevant to TTI's damages. TTI is already aware that ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████ Exs. 2, 3. However, ███████████████████████████ ████████████████████████████████████████████ would establish the degree of harm that Bonilla's reports caused damage to TTI. *Third*, Request No. 12 seeks relevant discussions between Muddy Waters and Bonilla regarding the fallout of their actions—namely, the MDFL Action—and their assessments of the actions that led to the lawsuit.

These documents are not just relevant; they are also necessary for TTI to effectively litigate the MDFL Action. Muddy Waters' production may show that TTI needs to request additional documents from Bonilla, and without the documents, TTI is at the mercy of the August 2 fact discovery deadline. *See* MDFL Action, ECF. No. 50. Moreover, without documents from Muddy Waters explaining the extent of its relationship with Bonilla, and Freddie Brick's role in this relationship, TTI will not be able to effectively depose Mr. Brick. Muddy Waters's failure to provide documents is thus prejudicing TTI's ability to build its case and develop a complete factual record of the people and events that contributed to Bonilla's defamation against TTI.

**II.     Muddy Waters Has Not Met its Burden to Show TTI's Requests are Overbroad or Unduly Burdensome**

---

LY, 2010 WL 11506721 (W.D. Tex. July 27, 2010) ("It appears from Cedra's decision to produce responsive documents that it has waived any objection it had to such production.").

Muddy Waters objects to each Request (without explanation) on the grounds of overbreadth, relevance, and burden. But these objections fail: each Request is narrowly tailored to a specific event and time period that is relevant to the MDFL Action. *Donaldson*, 2023 WL 6201372, at *6 (overruling objections to non-party subpoena on the grounds that the subpoena requests were not overbroad or unduly burdensome).

TTI has agreed to narrow Requests Nos. 1 and 11 to documents from January 1, 2022 to the present. These Requests are therefore narrowly targeted at documents from a specific and narrow period of time relevant to the MDFL Action. They are also relevant for establishing Bonilla acted with negligence or actual malice for the reasons discussed above.

*First*, Requests Nos. 2, 3, and 5 are by implication time-bound because discovery has shown that Bonilla began planning the reports at most two years ago. TTI also agreed to narrow Request No. 3 to documents from January 1, 2022 to present, and explicitly limited Request No. 5 to August 1, 2022 to present, precisely because of this limitation. The requested documents are also relevant because they demonstrate Bonilla's financial incentive to hurt TTI, write about TTI anonymously, and failure to take actions to verify his claims. Similarly, Request No. 4, by its text, covers less than two years of documents and will help to establish TTI's damages. *Second*, Requests Nos. 6 and 7 necessarily relate to a specific and brief time period as these documents could not predate the actual planning or drafting of the reports. These Requests will also establish the scope of TTI's damages by showing how widely Bonilla and Muddy Waters distributed the defamatory reports.

*Third*, Requests Nos. 8, 9, and 10 are also narrowly and necessarily time-bound. Bonilla's own production shows that discussions about his appearances began only in February 2023. There is no reason to believe that Muddy Waters's documents about his appearances significantly before

this date. This information is relevant for establishing TTI's damages as they establish how many people read Bonilla's defamatory statements. *Finally*, Request No. 12 is narrowly and necessarily time-bound. This Request is also relevant to show whether Bonilla acted negligently or recklessly when it published ███████████████████████████████████████████████ ███████████████████████████████████████████. *See supra* Section I.

In response, Muddy Waters simply declares the Requests to be overbroad. Ex. 7. But courts have rejected such "text-book boilerplate objections." *League of United Latin Am. Citizens v. Aboott*, 2022 WL 3353409, at *3 (W.D. Tex. Aug. 12, 2022) (overruling overbreadth objections where they were supported by only "a single sentence"). Without "particularized facts" to support its objections, Muddy Waters's bare and conclusory assertions are improper and insufficient. *Phillips v. Murphy Oil USA, Inc.*, 2024 WL 677711, at *2 (W.D. Tex. Feb. 12, 2024).

### III.    TTI's Requests Do Not Seek Privileged Information.

Muddy Waters' final objection (again, asserted without specific or particularized facts) is that the attorney-client privilege and work-product protection bar TTI's Requests.[4] Ex. 7. However, TTI seeks ***pre-litigation records*** of financial relationships, financial transactions, and communications, that do not—and cannot—implicate these principles. *See Total Rx Care, LLC v. Great N. Ins. Co.*, 318 F.R.D. 587, 601 (N.D. Tex. 2017) (rejecting claims of privilege over records created prior to litigation where party failed to produce evidence showing that attorney work product or attorney-client privilege standard was met). And Muddy Waters has provided nothing to support its claim that these documents are subject to privilege or even proffered a plausible basis

---

[4] Muddy Waters has also unjustifiably failed to produce a privilege log, and its failure to do so should waive its purported privilege. *See, e.g.*, *id.* (noting that a party's continual failure to provide a privilege log can result in waiver of privilege where a court finds the failure results from unjustified delay, inexcusable conduct, or bad faith).

for its claim of privilege over communications with Bonilla, a third party. *Id.*; *see also Equal Emp't Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) (noting that privilege logs "must provide sufficient information to permit courts and other parties to test the merits of the privilege claim.") (internal citations omitted). Its objections should fail on these independent bases.

### IV. Muddy Waters's Refusal to Produce Documents Based on Bonilla's Objections Is Improper

Finally, Muddy Waters cites Bonilla's objections to the Subpoena as grounds for its refusal to produce. Ex. 7. But Bonilla has not established that specific facts showing that the third-party subpoena implicates his personal rights or privileges. *Compare Harris v. Henry*, 2023 WL 5541077, at *1-5 (W.D. Tex. Aug. 28, 2023) (finding standing where third-party subpoena sought personal "employment, medical, and educational records") *with Clayton Brokerage Co., Ins. Of St. Louis v. Clement*, 87 F.R.D. 569, 571 (D. Md. 1980) (rejecting standing where third-party subpoena sought bank records because these were "instruments of commercial transactions" and "business records" that did not violate the party's privacy rights). No right or privilege exists here, nor does Bonilla purport to claim one. Rather, TTI's Requests seek Muddy Waters' documents ███████████████████████████████████████████████████████████████████████████. These are instruments of commercial transaction and business records, not Bonilla's personal, private records.

### CONCLUSION

For the foregoing reasons, TTI respectfully requests that the Court grant this motion to compel, overrule Muddy Waters's objections, enter an order compelling Muddy Waters to provide complete responses to the Requests, including productions of documents not yet produced where warranted, and grant such other and further relief as the Court deems just and proper.

## LOCAL RULE CV 7(g) CERTIFICATION

Pursuant to Local Rule CV 7(g), I hereby certify that TTI's counsel conferred with Muddy Water's counsel by email dated June 8, 2024 in a good-faith attempt to resolve the matter by agreement and no agreement could be made because non-party Muddy Waters opposes the relief requested in this motion.

Dated: July 29, 2024

By: /s/ *Asher Griffin*
**QUINN EMANUEL URQUHART & SULLIVAN LLP**

Asher B. Griffin, Texas Bar No. 24036684
300 West 6th Street, Suite 2010
Austin, TX 78701
(737) 667-6100
ashergriffin@quinnemanuel.com

Jason D. Sternberg (*pro hac vice* anticipated)
2601 South Bayshore Drive, 15 Floor
Miami, FL 33133
Telephone: (305) 402-4880
Facsimile: (305) 901-2975
jasonsternberg@quinnemanuel.com

Kristin Tahler (*pro hac vice* anticipated)
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
kristintahler@quinnemanuel.com

*Attorneys for Techtronic Industries Company Limited and Techtronic Industries Factory Outlets, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on Monday, July 29, 2024, true and correct copies of the foregoing document were served on the following counsel of record at the addresses and in the manner indicated:

**VIA E-MAIL**

                                        Dilan Esper
                                        desper@harderllp.com
                                        HARDER STONEROCK LLP
                                        8383 Wilshire Boulevard, #526
                                        Beverly Hills, CA 90211
                                        Telephone: (424) 203-1600


                                        /s/ *Asher Griffin*
                                        Asher Griffin